136 So.2d 193

**MERCHANTS NATIONAL BANK OF MOBILE et al.**

v.

**J. D. MORRIS et al.**

I Div. 840.

Supreme Court of Alabama.

Dec. 21, 1961.

J. B. Blackburn, Bay Minette, and Mc-Corvey, Turner, Johnstone, Adams & May, Mobile, for appellants.

C. LeNoir Thompson, Bay Minette, and Caffey, Gallalee & Caffey, Mobile, for appellees.

LIVINGSTON, Chief Justice.

The controversy now before this Court is over four acres of more or less "wild" land, in Sec. 38, Township 4 South, Range 1 East, in Baldwin County, Alabama. This property has been the subject matter of litigation on at least four previous occasions.

In 1927, the Circuit Court of Baldwin County, Alabama, in Equity, made and entered a decree quieting title to the land in question in Old Spanish Fort Development Company, a Corporation. There was no appeal from that decree. The Merchants National Bank of Mobile et al. are the successors in title to Old Spanish Fort Development Company.

In 1949, in the case of Merchants National Bank of Mobile et al. v. Morris, et-al., an ejectment suit, there was a jury verdict, and judgment rendered thereon, for the defendants. This judgment was reversed by this Court on appeal on the grounds that defendants in that suit were permitted to attack collaterally the 1927 decree. Merchants Nat. Bank of Mobile et al. v. Morris et al., 252 Ala. 566, 42 So.2d 240.

In October 1952, a writ of mandamus was awarded by this Court to vacate an order transferring the cause to the jury docket after parties had consented to a trial without a jury. Ex parte Merchants Nat. Bank of Mobile et al., 257 Ala. 663, 60 So.2d 684. After the writ was granted, the case was tried by the Court without a jury and judgment for the plaintiffs in the trial court was appealed. On appeal, this judgment for the plaintiffs was affirmed, on May 22, 1958. Morris et al. v. Merchants Nat. Bank of Mobile et al., 267 Ala. 542, 103 So.2d 310.

On December 31, 1958, J. D. Morris and D. L. Morris, the defendants in the ejectment suit, filed in the Circuit Court of Baldwin County, Alabama, in Equity, a bill of complaint against the Merchants National Bank of Mobile et al., which eventuated in the appeal now presently before the Court. The separate demurrers of respondents named in that bill were overruled and the respondents appealed. The bill itself, and briefs on both sides of the question, are confusing as to the exact issues involved. The appellees on this appeal prepared the bill of complaint and their version of the nature and intent of the bill, as stated in briefs, is:

"The appeal in this case is from a decree overruling a demurrer to a bill of complaint seeking to determine the validity and effect of a decree [the 1927] in a proceeding purporting to be under and in accordance with the so-called statute for quieting title in rem. The bill in the in rem proceeding sought to quiet title to *all* of Sec. 38, Township 4 South, Ranges 1 and 2 East, in Baldwin County. * * * It is essentially a bill to remove a cloud created by a decree never appealed, and to quiet title, not a bill of review. * * * The relief sought in the present bill * * * involved a direct attack on an equity decree purporting to quiet title * * *."

It is manifest that the bill in this case is not a bill of review or a bill in the nature of a bill of review.

The appellees contend that the bill was not designed to set aside a decree for fraud in its concoction but is designed for the purpose of setting aside the 1927 decree for the lack of jurisdiction of John L. Alexander (predecessor in title to J. D. Morris and D. L. Morris) in the in rem suit, and for the lack of service of process on him. We note here that appellees, J. D. Morris and D. L. Morris, obtained a deed from John L. Alexander in 1941.

Apt demurrers raised the questions of lack of equity in the bill, the three and ten-year statute of limitations, the rule of prescription and laches.

The ejectment suit disposed of the question of title as between the parties, as we shall demonstrate. We, of course, judicially know the contents of the records of this Court in this particular litigation.

It is true that the case reported in 252 Ala. 566, 42 So.2d 240 was reversed because of the giving of Charge 6, together with a part of the oral charge of the court to the effect that the 1927 decree could be impeached collaterally. In the same judgment of reversal, it was pointed out that the Old Spanish Fort Development Company introduced three recorded deeds which gave the Old Spanish Fort Development Company color of title. Two of these deeds were recorded in October, 1925, and the other one was recorded in April, 1926.

On the second trial of the ejectment suit, reported in 267 Ala. 542, 103 So.2d 310, 311 two of these deeds were admitted in evidence without objection, and the other

deed was admitted over the objection of defendants in the ejectment suit. Thus, the Old Spanish Fort Development Company had color of title, beginning in 1925 or 1926. So that the admission of the bill of complaint in the chancery suit and the decree of 1927 were merely cumulative evidence. The judgment rendered on the second trial of the ejectment suit was appealed. On that appeal, this Court said:

"Appellants also insist that they have shown title by adverse possession. In the opinion in the first case we observed—'Moreover, the evidence in the instant case does not show that anyone was in adverse possession of the land when the bill was filed and decree rendered.' In the second trial, the appellants adduced evidence that their immediate predecessor in title, John Alexander, was in possession of the four acres in December, 1927, shortly after the date of the decree in the equity case and he and those holding under him had been in possession down to the date of the instant suit which was filed June 21, 1946. This produced a direct conflict in the testimony as to which party was in possession and the trial court resolved that conflict in favor of appellees. We cannot say the trial court was plainly wrong because there was considerable evidence to support his finding.

"Moreover, there are other reasons why John Alexander could not claim adverse possession after the decree in 1927. The statute, Tit. 7, § 828, Code 1940, requires color of title and assessment of the land for taxes for ten years. Alexander had no color of title made after the 1927 decree and never listed the land for taxation. He could not claim title by descent cast as provided by the statute because he could point to no predecessor in title who was in possession of the property after the 1927 decree, or to a devise from a predecessor in title after that time.

"Alexander's deed to appellants was executed and recorded in 1941. It could be no more than color of title. Since this suit was filed in 1946, appellants' possession was less than five years even if it be conceded that they were in the exclusive possession of the property. This does not meet the statutory requirements for adverse possession. Tit. 7, § 828."

In McCormick v. McCormick, 221 Ala. 606, 130 So. 226, 227, it was said:

"Ejectment is the well-known and favored action for the trial of title to land.

"The plea of 'not guilty' puts the title in issue and, broadly speaking, any fact tending to defeat plaintiff's title or sustain that of defendant is within the issue. Code, § 7456; Bynum v. Gold, 106 Ala. 427, 17 So. 667; Torrey v. Forbes, 94 Ala. 135, 10 So. 320.

"True, of course, merely equitable titles and defenses are not cognizable in a court of law, and are not litigated in an action of ejectment.

"Appellant relies upon this principle to avoid the effect of the judgment in ejectment.

"Does it apply here?

"Certainly the title of respondent's grantor, her title in fee under the homestead law, was within the issue in the ejectment suit. So, also, the issue of mental incapacity to execute such deed, a matter going to the existence of a deed in fact.

"This leaves the question of undue influence as invalidating the deed. Undue influence as between persons standing in confidential relations is involved. We need not consider whether, in the first instance, a bill to cancel the deed upon this ground would lie while the

grantee was still in possession thereunder.

"The inquiry is: Was this question within the issues and litigable in the action of ejectment?

"We must answer in the affirmative."

■ Title was tried in the ejectment suit and it was held that the successor in title to the Old Spanish Fort Development Company had acquired title since the 1927 decree was recorded, and this is so regardless of that decree. The introduction of the deeds, as color of title, and the showing of the payment of taxes for more than ten years after the acquisition of color of title, whether that color of title be regarded as coming from the deeds or the 1927 decree of the chancery court was sufficient to establish title in appellants. It was implicit in the judgment rendered in the ejectment suit that the defendants in the ejectment suit (complainants in the bill presently before this court) had lost whatever rights or title they might have had since the deeds were recorded. The setting aside of the decree sought by the bill now before this Court would avail the complainants nothing. Equity will not do a vain thing. If the appellants have no title to the land in question, having lost it since the 1927 equity decree, and regardless of that decree, there is no cloud to remove from the title of complainants, for the simple reason that they have no title, and the cancellation of the equity decree of 1927 would put them in no better position in proving title, because they have none.

The bill of complaint is totally lacking in equity and the demurrers should have been sustained. In our opinion, the bill cannot be amended so as to give it equity.

Reversed and rendered.

LAWSON, STAKELY and MERRILL, JJ., concur.